## United States District Court
### District of Massachusetts

```
_____
                                )
MASSACHUSETTS BIOLOGIC          )
LABORATORIES OF THE UNIVERSITY  )
OF MASSACHUSETTS,               )
          Plaintiff,            )    Civil Case No.
                                )    12-cv-10006
          v.                    )
                                )
MEDIMMUNE, LLC,                 )
          Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Actions to resolve the rights and obligations of the Massachusetts Biologic Laboratories of the University of Massachusetts ("MassBiologics") and MedImmune, LLC ("MedImmune") under the licensing agreement between the parties are on parallel tracks: one in Maryland state court and the other here in Massachusetts federal court. Pending before the Court is MedImmune's motion to stay this case pending resolution of the Maryland action.

## I.  Background

The Massachusetts Public Health Biologics Laboratories ("MPHBL") was a public entity established in 1894 by the Massachusetts Board of Health to research, develop and produce childhood vaccines and biologic products for the public good.

-1-

From 1959 to 1996, the MPHBL was administered by the Massachusetts Health Research Institute ("MHRI"), a private, non-profit entity under contract with the Massachusetts Department of Public Health ("MDPH").  MHRI is now known as Third Sector New England, Inc. ("Third Sector").

In 1984, scientists George Siber and Jeanne Leszczynski working for MHRI developed technology ("the Technology") employing naturally occurring immunoglobulin designed to treat and prevent respiratory syncytial virus ("RSV"), a serious respiratory illness affecting children.  Five years later, MHRI entered into an agreement ("the RSV License Agreement") with Molecular Vaccines, Inc. and Pediatric Pharmaceuticals, Inc., the corporate predecessors of MedImmune, under which MHRI granted those companies an exclusive right and license to the Technology in exchange for ongoing royalty payments on the sales of anti-RSV products developed by those companies.

In 1997, MassBiologics" was established by the Massachusetts Legislature, M.G.L. 75, § 43, to take the place of the MPHBL,

> so as to enable said laboratories to maintain their
> public purpose, preserve their ability to compete in an
> increasingly competitive marketplace and maximize their
> value to the Commonwealth,

1996 Mass. Acts ch. 334, at 1338.  MassBiologics became a party to the RSV License Agreement when MedImmune, Third Sector and MassBiologics entered into an Assignment and Assumption Agreement ("the Assignment Agreement") under which Third Sector transferred

its rights, interests and obligations under the RSV License Agreement to MassBiologics.  Pursuant to the Assignment Agreement, MedImmune has paid royalties to MassBiologics, averaging $30 million annually, on sales of anti-RSV products RespiGam® and Synagis®.  In 2006, MedImmune offered to purchase the license outright in exchange for a one-time, lump-sum payment.  MassBiologics declined.

In August 2011, MedImmune filed suit in Maryland state court ("the Maryland action") seeking a declaratory judgment that its obligation to make royalty payments under the RSV License Agreement had ceased.  MedImmune alleged that MassBiologics had breached the RSV License Agreement because 1) scientists within the UMass system had filed applications for research which MedImmune claims should have been licensed to MedImmune and 2) UMass granted a patent license to Novavax, Inc. ("Novavax") which would purportedly assist Novavax to compete against MedImmune.

Included as defendants in the Maryland action are MassBiologics and Third Sector, successors-in-interest to signatories of the RSV License Agreement, and the Henry M. Jackson Foundation for the Advancement of Military Medicine, Inc. ("HJF"), a party to a separate licensing agreement concerning similar technology (collectively, "the Maryland defendants").  MassBiologics moved to dismiss the claims for lack of personal

jurisdiction and on forum <u>non</u> <u>conveniens</u> grounds.  The Maryland court denied the motion, concluding that Maryland's long-arm statute authorized personal jurisdiction over MassBiologics and that Maryland state court was a convenient forum in which to adjudicate the dispute.  Parties have commenced discovery and trial is scheduled for October 1, 2012.

In November 2011, MassBiologics filed suit against MedImmune in Massachusetts Superior Court for Suffolk County ("the Massachusetts action").  The Complaint recites claims for breach of contract (Count One), breach of the implied covenant of good faith (Count Two), unfair and deceptive trade practices in violation of the Massachusetts Consumer Protection Act, M.G.L. 93A, §§ 2, 11 (Count Three) and declaratory judgment (Count Four).  Plaintiff requests relief in the form of 1) actual and treble damages, 2) specific performance of the RSV License Agreement and 3) declaratory judgments that a) the RSV License Agreement is enforceable and has not expired, b) MassBiologics' obligations thereunder encompass only research and other activities performed by MassBiologics scientists and do not extend to research and other activities performed by UMass faculty and staff and c) in the event MedImmune ceases to pay royalties due under the RSV License Agreement, MedImmune will thereby forfeit the right to sell its royalty-bearing products.

Plaintiff's contract and consumer protection claims are

-4-

premised on allegations that, by rejecting plaintiff's offer to cure, unilaterally terminating the RSV License Agreement and filing the Maryland action, MedImmune not only breached the RSV License Agreement but also engaged in deceptive trade practices. As MassBiologics sees it, MedImmune now seeks to obtain through litigation what it could not achieve through negotiation.

In January 2012, MedImmune timely removed the case to this Court based on the diversity of citizenship of the parties and moved for a stay pending resolution of the Maryland action.

## II.  Legal Analysis

### A.  Standard

#### 1.  The Colorado River and Wilton/Brillhart doctrines

When a federal action runs parallel to a state court proceeding involving similar parties and issues, a district court may, under certain circumstances, stay the federal action or certain of the claims, pending the resolution of the state court action, in the interests of cooperative federalism and judicial economy.  The standard to determine whether a stay is appropriate depends on the character of relief sought.

If the federal plaintiffs seek damages or injunctive relief (hereafter referred to as "coercive relief"), a district court may stay the case only in "exceptional circumstances." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  Because federal courts have a "virtually unflagging

obligation" to exercise the jurisdiction granted to them by Congress, the "crevice" in federal jurisdiction carved out by the Colorado River doctrine "is a narrow one." Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 (1st Cir. 2010).  The doctrine "is to be used sparingly and approached with great caution." Nazario-Lugo v. Caribevision Holdings, Inc., 670 F.3d 109, 115 (1st Cir. 2012) (ruling that the District Court abused its discretion in dismissing case pursuant to the Colorado River doctrine).

Conversely, if the federal plaintiffs seek declaratory relief, a district court has broad discretion to stay the federal action as long as the necessary parties have been joined in the state court proceeding and the claims of all parties in interest can satisfactorily be adjudicated by that tribunal. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942); Wilton v. Seven Falls Co., 515 U.S. 277, 281-90 (1995).  Declaratory judgment claims are treated differently than their coercive counterparts because Congress, in enacting the Declaratory Judgment Act, conferred on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton, 515 U.S. at 286 (stressing that 28 U.S.C. § 2201(a) provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); id. at 288 ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver;

-6-

it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."). Thus, in the declaratory judgment context, the general principle that federal courts should adjudicate claims within their jurisdiction "yields to considerations of practicality and wise judicial administration." <u>Id.</u>

### 2. The Circuit Split

Courts are split on which standard to apply where, as here, plaintiffs bring claims for coercive and declaratory relief. At least five distinct approaches have emerged. <u>New England Ins. Co. v. Barnett</u>, 561 F.3d 392, 395-96 (5th Cir. 2009) (cataloguing the approaches). The absence of consensus is unsurprising given that there can be "no simple compromise between the [strict] duty to exercise jurisdiction over coercive claims, and the discretion to exercise jurisdiction over declaratory claims." <u>Columbia Gas</u> v. <u>Am. Int'l Grp.</u>, No. 10-1131, 2011 WL 294520, at *1 (W.D. Pa. Jan. 27, 2011).

The Second, Fifth and Tenth Circuits hold that the <u>Colorado River</u> standard governs all claims whenever an action includes both declaratory and coercive claims for relief. <u>New England Ins. Co.</u> v. <u>Barnett</u>, 561 F.3d 392, 395-96 (5th Cir. 2009); <u>United States</u> v. <u>City of Las Cruces</u>, 289 F.3d 1170, 1181-82 (10th Cir. 2002); <u>Vill. of Westfield</u> v. <u>Welch's</u>, 170 F.3d 116, 125 n.5 (2d Cir. 1999). Those courts reason that, when in conflict, a

federal court's "virtually unflagging obligation" to exercise
jurisdiction over coercive claims necessarily overrides a federal
court's discretion to review declaratory judgment actions.  In
the collective opinion of those Circuit Courts, declining
jurisdiction over coercive claims merely because their outcome
hinges on related discretionary claims would give short shrift to
the "strict duty" imposed on district courts "to exercise the
jurisdiction that is conferred upon them by Congress."
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996).

     The Fourth Circuit has taken the position that in a mixed
complaint scenario, the Colorado River standard governs the
coercive claims and the Wilton/Brillhart standard governs the
declaratory claims. Great Am. Ins. Co. v. Gross, 468 F.3d 199,
211 (4th Cir. 2006); see also Seaton Ins. Co. v. Clearwater Ins.
Co., 736 F. Supp. 2d 472, 475-76 (D.R.I. 2010) (referring to this
approach as the "surgical" or "disentanglement" method).  While
it appears to be unique, the Fourth Circuit approach will nearly
always yield the same result as that of the Second, Fifth and Tenth
Circuits because when a plaintiff seeks relief in addition to a
declaratory judgment, such as damages or injunctive relief, both
of which a court must address, "the entire benefit derived from
exercising discretion not to grant declaratory relief is
frustrated, and a stay would not save any judicial resources."
Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 466

(4th Cir. 2005).

Under the "independence" test endorsed by the Seventh and
Ninth Circuits, courts ask whether the coercive claims are
independent of the request for declaratory relief, i.e., whether
"they are alone sufficient to invoke the court's subject matter
jurisdiction and can be adjudicated without the requested
declaratory relief." R.R. Street & Co., Inc. v. Vulcan Materials
Co., 569 F.3d 711, 715 (7th Cir. 2009); United Nat. Ins. Co. v.
R&D Latex Corp., 242 F.3d 1102, 1112-13 (9th Cir. 2001).  If the
coercive claims are independent, which they are in most cases,
those Courts apply the Fourth Circuit test: the Colorado River
standard governs the coercive claims and the Wilton/Brillhart
standard governs the declaratory claims. R.R. Street, 569 F.3d at
715.  If the claims are dependent, the Wilton/Brillhart standard
is applied to both the coercive and declaratory claims. Id.
Those courts suggest that their approach best reconciles the
competing imperatives announced by the Supreme Court in Colorado
River, Brillhart and Wilton.

Under the "heart of the action" test adopted by the Eighth
Circuit and some lower courts, the salient issue is whether the
suit as a whole can best be described as declaratory or coercive.
See, e.g., Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788, 793
(8th Cir. 2008); Perelman v. Perelman, 688 F. Supp. 2d 367, 378
(E.D. Pa. 2010); Nissan N. Am., Inc. v. Andrew Chevrolet, Inc.,

589 F. Supp. 2d 1036, 1040-41 (E.D. Wis. 2008); <u>Lexington Ins. Co.</u> v. <u>Rolison</u>, 434 F. Supp. 2d 1228, 1235-38 (S.D. Ala. 2006). A suit is declaratory in nature if the coercive claims hinge on the outcome of the declaratory claims such that an adverse ruling on the latter would prevent recovery on the former.  If the suit is coercive in nature, the court applies the <u>Colorado River</u> standard to both the coercive and declaratory claims. <u>Royal Indem. Co.</u>, 511 F.3d at 793.  If declaratory in nature, the court has discretion under <u>Wilton</u>/<u>Brillhart</u> to decline to exercise jurisdiction over both sets of claims. <u>Id.</u>  Those courts conclude that just because a litigant strategically pleads a claim for damages in an action for declaratory judgment does not abrogate a district court's broad <u>Wilton</u>/<u>Brillhart</u> discretion to decline to hear the declaratory claim.  As one court commented,

> It would be the tail wagging the dog if the presence of a subordinate claim were sufficient to require a federal court to hear primary claims that it has determined are better resolved elsewhere.

<u>Franklin Commons E. P'ship</u> v. <u>Abex Corp.</u>, 997 F. Supp. 585, 592 (D.N.J. 1998).

### 3.   The First Circuit

The First Circuit has not yet staked out a clear position on the circuit split, although the issue did arise in <u>Rossi</u> v. <u>Gemma</u>, 489 F.3d 26 (1st Cir. 2007).  The District Court in that case 1) abstained from reviewing plaintiff's constitutional claims pursuant to <u>Younger</u> v. <u>Harris</u>, 401 U.S. 37 (1971), 2) dismissed

-10-

plaintiff's state-law declaratory judgment claim, pursuant to
Wilton v. Seven Falls Co., 515 U.S. 277 (1995) and Brillhart v.
Excess Ins. Co. of Am., 316 U.S. 491 (1942), and 3) declined to
exercise supplemental jurisdiction over plaintiff's remaining
state-law claim. Id. at 34-39.  Affirming the judgment, the First
Circuit began by concluding that it was within the District
Court's discretion to dismiss the plaintiff's declaratory
judgment claim under the Wilton/Brillhart doctrine. Id. at 39.
(explaining that "when declaratory relief is sought under state
law, the rigorous Colorado River test need not be met").  It
later noted in dictum that, although a court would ordinarily
apply the Colorado River standard to determine whether to stay or
dismiss the remaining coercive claim, because the District Court
had already dismissed the claims conferring federal jurisdiction,
the District Court's declination of supplemental jurisdiction
over the state claims was another suitable option. Id. at 39.

By affirming the District Court's application of the
Wilton/Brillhart standard to the declaratory claim and suggesting
that the Colorado River standard would ordinarily be applied to
the remaining coercive claim, the First Circuit appeared to adopt
the Fourth Circuit's "surgical" approach. See Seaton Ins. Co. v.
Clearwater Ins. Co., 736 F. Supp. 2d 472, 475-76 (D.R.I. 2010).
Yet there is reason to believe that Rossi is not the tacit
endorsement of the Fourth Circuit position it, at first glance,

appears to be.  If the First Circuit had intended to choose sides
on this debate, which has engendered considerable division among
the Circuits, it is unlikely that it would have adopted a
position without explaining its rationale or, at the very least,
acknowledging the division of authority.  It is far more likely
that the First Circuit limited its inquiry into whether the
District Court had abused its discretion and, finding no such
abuse, left the matter for another day.

Ordinarily, when there is no governing rule from the First
Circuit, a district court is refreshingly free to adopt an
existing test or to fashion a new rule of its own. E.g., United
States v. Martinez, No. 11-10148-NMG, 2012 WL 220244 (D. Mass.
Jan. 20, 2012).  In the face of uncertainty as to a decision's
precedential value, however, a District Court is well-advised to
exercise caution and refrain from making a broad ruling where a
narrow one will suffice.  This Court reads Rossi as allowing the
so-called surgical approach but not requiring it.  Yet at least
one other lower court has interpreted Rossi differently. Seaton
Ins. Co. v. Clearwater Ins. Co., 736 F. Supp. 2d 472, 475-76
(D.R.I. 2010).  In light of the ambiguity, this Court will take
the prudent course and apply the surgical approach, a method at
least approved of, if not mandated, by the First Circuit.

### B.  Application

The Court will apply the Colorado River standard to the

contract and consumer protection claims and the <u>Wilton</u>/<u>Brillhart</u> standard to the declaratory judgment claim.  Before doing so, however, the Court will first address the threshold issue of whether the Maryland action is "parallel" to the instant case. <u>Puzey</u> v. <u>BJ's Wholesale Club, Inc.</u>, No. 11-11339-MLW, 2012 WL 1114164, at *3 (D. Mass. Mar. 31, 2012) ("In determining whether <u>Colorado River</u> abstention is appropriate, a threshold issue is whether the state litigation is parallel to the federal case.").

### 1.    Parallel Litigation

A state proceeding is considered parallel to its federal counterpart, in this context, where "substantially the same parties are contemporaneously litigating substantially the same issues" and there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." <u>Puzey</u>, 2012 WL 1114164, at *3; <u>see also</u> <u>In re Novell, Inc. Shareholder Litig.</u>, No. 10-12076-RWZ, 2012 WL 458500, at *7 (D. Mass. Feb. 10, 2012) (finding cases parallel where the parties and issues to be adjudicated were the same and the claims were predicated on the same underlying facts); <u>RFF Family P'ship, LP</u> v. <u>Link Dev., LLC</u>, No. 11-10968-NMG, 2012 WL 893737, at *5 (D. Mass. Mar. 13, 2012) (finding cases not parallel where federal plaintiff was not a party to the state court action).

As the plaintiff points out, there are at least three ways in which the Massachusetts action differs from the Maryland

action.  First, this case includes contract and consumer protection claims in addition to the declaratory judgment claim common to both actions.  Second, HJF and Third Sector are not parties to the Massachusetts action, the former because it was not a signatory to the RSV License Agreement and the latter because MassBiologics did not join it out of respect for its desire to avoid litigation costs.  Third, although both claims for declaratory judgment ask the forum courts to declare the parties' obligations under the RSV License Agreement, the underlying allegations differ.  The Complaint filed by MedImmune in the Maryland action charges that MassBiologics breached the contract's non-competition provision, while the Complaint filed by MassBiologics here accuses MedImmune of contriving pretextual reasons to avoid its royalty obligations.  Those differences are undisputed.  The issue is whether they are substantial enough to render the cases not parallel (or not analogous).

Because the overarching issue in both cases is the rights and obligations of the parties under the RSV License Agreement and the companies with a stake in the outcome of the dispute are parties to both actions, the Massachusetts and Maryland actions are "parallel" for the purpose of determining whether a stay is warranted.  That MassBiologics added to the mix derivative claims for breach of contract and violation of the Massachusetts Consumer Protection Act does not alter the equation. See Clark v.

-14-

<u>Lacy</u>, 376 F.3d 682, 686-87 (7th Cir. 2004) ("Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action.").

### 2. Applying the <u>Colorado River</u> standard to the contract and consumer protection claims

Having found the cases to be parallel, the Court applies the more exacting <u>Colorado River</u> standard in deciding whether to stay the contract and consumer protection claims pending resolution of the Maryland action.

The First Circuit has instructed district courts to weigh the following factors, first articulated in <u>Colorado River</u>, in determining whether exceptional circumstances warrant staying a case pending the resolution of a parallel state-court action:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

<u>Jiménez</u>, 597 F.3d at 27-28. The eight factors are not a "mechanical checklist," but rather are to be applied in a "pragmatic, flexible manner with a view to the realities of the case at hand." <u>Moses H. Cone Mem. Hosp.</u> v. <u>Mercury Const. Corp.</u>, 460 U.S. 1, 16, 21 (1983). A court must balance its obligation to exercise jurisdiction against the combination of factors

counseling against that exercise, "with the balance heavily
weighted in favor of the exercise of jurisdiction." Id. at 16.
While they do exist, e.g., Rivera-Feliciano v. Acevedo-Vila, 438
F.3d 50 (1st Cir. 2006); Currie v. Grp. Ins. Comm'n, 290 F.3d 1
(1st Cir. 2002); Liberty Mut. Ins. Co. v. Foremost-McKesson,
Inc., 751 F.2d 475 (1st Cir. 1985), cases in which jurisdiction
was declined pursuant to this test are "few and far between."
Jiménez, 597 F.3d at 28.

Applied to this case, the first and second factors are
neutral.  Neither the Maryland action nor the Massachusetts
action involves the comprehensive disposition of rights in a
particular piece of property, and Maryland is just as
inconvenient for the plaintiff as Massachusetts is for the
defendant.

The third factor, which requires something more than garden-
variety inefficiency associated with the concurrent litigation of
parallel actions, weighs against a stay because no exceptional
basis places this case "beyond the pale of duplicative
proceedings." Jiménez, 597 F.3d at 29.  As in Nazario-Lugo, this
case "involves a simple contract dispute requiring application of
settled local law" and, as such, gives rise to "routine risks
presenting no occasion to animate the piecemeal litigation
factor". 670 F.3d at 117.

The fourth factor weighs in favor of a stay because the

Maryland action was filed first and has progressed further than this case.  There, preliminary motions have been heard and decided, discovery has begun and is scheduled to conclude in July, 2012 and trial has been set for October, 2012.  In contrast, this case has not progressed beyond preliminary pleadings and motions.

The fifth factor is neutral.  This case does not raise an issue of federal law which is better resolved by a federal court, nor is it the "rare instance" in which "the presence of state-law issues creates any momentum toward deferring to pending local litigation."  Nazario-Lugo, 670 F.3d at 118.  This case involves run-of-the-mill contract and consumer protection issues, not "particularly novel, unusual or difficult questions of legal interpretation that are best left to state court resolution." Id.

The sixth factor is likewise neutral because both fora are capable of determining the parties' rights and obligations under the RSV License Agreement. See United States v. Fairway Capital Corp., 483 F.3d 34, 43 (1st Cir. 2007) (explaining that the sixth factor is relevant to a court's analysis only when it disfavors abstention).  MassBiologics insists that this Court is better positioned to adjudicate Massachusetts claims and to interpret a contract governed by Massachusetts law.  While that may be true, it proves too little.  State courts are routinely called upon to interpret contracts governed by the laws of other states.  That Massachusetts contract and consumer protection law may be

unfamiliar to a Maryland court does not prevent it from
satisfactorily adjudicating this dispute.

With respect to the seventh factor, the Supreme Court has
instructed, post-Colorado River, that a district court is to look
beyond the federal action and consider the circumstances giving
rise to the filing of the state suit, see Moses H. Cone, 460 U.S.
at 17 n.20 (finding "considerable merit" in the suggestion that
"the vexatious or reactive nature of either the federal or the
state litigation may influence the decision whether to defer to a
parallel state litigation under Colorado River"), under the
reasoning that "[f]orum shopping through the filing of declaratory
judgment actions is no more appropriate when it favors state over
federal jurisdiction than it is when it favors the reverse," R&D
Latex Corp., 242 F.3d at 1115.

For that reason, the seventh factor weighs against a stay.
MassBiologics submits that MedImmune's filing of the Maryland
action was a "contrived" and "pretextual" attempt not only to
shirk its contractual obligations but also to beat MassBiologics
to the courthouse and deprive it of a Massachusetts forum.  This
Court casts no aspersions on the motivations underlying
MedImmune's hasty filing of the Maryland action but shares the
plaintiff's view that Massachusetts is the common sense forum in
which to litigate issues underlying the RSV License Agreement, a
contract entered into in Massachusetts by a Massachusetts state

agency and governed by Massachusetts law.  While it is, of course, beyond the power of this Court to divest the Maryland court of its jurisdiction, nothing prevents this Court from adjudicating the pertinent issues on a parallel track.

The eighth and final factor is neutral because, in filing the Massachusetts action, MassBiologics was not attempting to evade the policy expressed in 28 U.S.C. § 1441 that only a defendant is permitted to remove a lawsuit to federal court. See Fairway Capital, 483 F.3d at 44.

Where, as here, only the fourth factor favors a stay and several factors counsel against one, the Court will exercise its "virtually unflagging obligation" to exercise its jurisdiction over the presented claims. Id.

### 3.   Applying the Wilton/Brillhart standard to the declaratory judgment claim

Having resolved to press forward with the adjudication of the coercive claims, the Court next considers whether to exercise its broad discretion to hear plaintiff's petition for declaratory judgment.  This inquiry turns on "considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288.  In cases such as this where coercive claims will remain in federal court whether or not the declaratory relief is considered, the "paramount" consideration in deciding whether to stay a declaratory claim is whether "doing so will be more efficient and convenient for the litigants." Perelman, 688 F. Supp. 2d at 378.

Because this Court must exercise jurisdiction over the contract and consumer protection claims, a stay of the remaining declaratory judgment petition would not make things more efficient or convenient. See Chase Brexton Health Servs., 411 F.3d at 466.  Accordingly, the Court will exercise its discretion to hear plaintiff's declaratory judgment claim as well.

### ORDER

In light of the foregoing, defendant's motion to stay (Docket No. 8) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 2, 2012